IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| BREGGETT A. RIDEAU and § <br> TERRENCE RIDEAU, INDIVIDUALLY § <br> and a/n/f T.R. § <br> § <br> v. § <br> § <br> KELLER INDEPENDENT SCHOOL § <br> DISTRICT, DR. JAMES R. § <br> VEITENHEIMER, SUPERINTENDENT § <br> OF KELLER ISD, IN HIS OFFICIAL § <br> CAPACITY, CINDY LOTTEN, § <br> KELLER ISD SCHOOL BOARD § <br> PRESIDENT, IN HER OFFICIAL § <br> CAPACITY AND DAN EVANS, § <br> INDIVIDUALLY § | CAUSE NO. _____ |

## PLAINTIFFS' ORIGINAL COMPLAINT

**NOW COMES** Breggett A. Rideau and Terrence Rideau, natural mother and father, guardians-in-fact, individually and as next friends of T.R.[1] ("the student") (hereinafter collectively termed "Plaintiffs"), by and through their attorneys of record, Michael K. Hurst and Jaime K. Olin of Gruber Hurst Johansen Hail, P.C. and Martin J. Cirkiel of the Law Firm of Cirkiel & Associates, P.C., and brings this their *Original Complaint* alleging that the Keller Independent School District (hereinafter referred to as "Keller ISD" or the "District"), Dr. James R. Veitenheimer, Superintendent of Keller ISD, in his official capacity (hereinafter referred to as "Superintendent"), Cindy Lotten, Keller ISD School Board President, in her official capacity (hereinafter referred to as "President"), hereinafter collectively referred to as the "School District Defendants," and Dan Evans, individually, violated the various rights of T.R., as more specifically pled herein. Plaintiffs reserve the right to replead this *Original Complaint* if new

---

[1] The initials of T.R. are used throughout the Complaint to protect the confidentiality of the student.

claims and issues arise upon further development of the facts. In support thereof, Plaintiffs would respectfully show the following:

## I.     INTRODUCTION AND SUMMARY OF THE CASE

1.     T.R. is a fifteen year-old severely disabled child who suffers from encephalopathy (brain damage). His verbal and cognitive skills are extremely limited, and he is wheelchair bound. A special custodial relationship existed between Keller ISD and T.R. because of the severity of his disability. Despite this relationship and attendant responsibility to provide T.R. with a safe educational environment, throughout the 2008/2009 and 2009/2010 school years, T.R. was neglected and physically abused by his special education teacher and other staff members in the special education department of Keller Middle School.

2.     Keller ISD violated Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 ("Section 504") and the American with Disabilities Act ("ADA") by failing to provide T.R. with a safe, non-hostile educational environment and by failing to reasonably provide modifications and accommodations commensurate with his unique and individualized disability.

3.     The School District Defendants acting under color of law, also acted with deliberate indifference when failing to train and supervise school district personnel, so that such failures acted to deprive T.R. of his rights to life, liberty, and bodily integrity under the Fourteenth Amendment of the United States Constitution; and are thus liable to Plaintiffs pursuant to 42 U.S.C. § 1983 ("Section 1983"), thereby.

4.     Defendant Evans is further liable to T.R. under various common law causes of action, including negligence, civil assault, false imprisonment, and intentional infliction of emotional distress.

<u>**ORIGINAL COMPLAINT**</u>                                                                                                       Page 2

## II. JURISDICTION

5. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C.A. §§ 1331 and 1343 because the matters in controversy arise under the laws and rules of the United States as noted above. This Court has supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367 because the claims are substantially related to those claims within the Court's original jurisdiction.

6. Finally, this Court has jurisdiction to award attorneys fees and costs to the Plaintiffs pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988(b) and Section 504 of the Rehabilitation Act of 1973, pursuant to 42 U.S.C § 2000(d), *et seq.*

## III. VENUE

7. Under 28 U.S.C. § 1391, venue is proper before this Court because the events and omissions giving rise to the Plaintiffs claims occurred in the Northern District of Texas.

## IV. CONDITIONS PRECEDENT AND ADMINISTRATIVE EXHAUSTION

8. Plaintiffs have exhausted their administrative remedies under the Individuals With Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(1) and T.A.C. § 89.1185(p).

## V. PARTIES

9. T.R. is a citizen of the State of Texas, and was and has been, at all pertinent times, a pupil in Keller ISD. It is uncontroverted that he is considered a "student with a disability," as defined by Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act of 1990, 42 U.S.C. §12101. Breggett A. Rideau and Terrence Rideau are his natural mother and father, and guardians-in-fact. They bring this cause individually and on behalf of their son. The Rideaus reside in Keller, Texas.

10. Defendant Keller ISD is a school district organized under the laws of the State of Texas and at all times was responsible for the care, management and control of all public school

business within its jurisdiction; providing a safe educational environment for students like T.R.; and adequately staffing, training and supervising its teachers and staff. Keller ISD may be served by and through Dr. James Veitenheimer, its Superintendant, Keller Independent School District, Education Center, 350 Keller Parkway, Keller, Texas, 76248.

11. Dr. James R. Veitenheimer, Superintendent of Keller ISD, in his official capacity, may be served at Keller Independent School District, Education Center, 350 Keller Parkway, Keller, Texas, 76248.

12. Cindy Lotten, Keller ISD School Board President, in her official capacity, may be served at Keller Independent School District, Education Center, 350 Keller Parkway, Keller, Texas, 76248.

13. Defendant Daniel Rhys Evans, who was employed by Keller ISD at all times material to this suit but is no longer, may be served at his residence: 6024 Hillglen Drive, Watauga, Texas 76148-1356.

## VI. FACTUAL BACKGROUND

14. During the 2008/2009 school year, Ms. Rideau noticed that T.R., a special education student at Keller Middle School ("KMS") in Keller ISD, experienced an increase in his episodes of dystonia,[2] during which his body would stiffen and he would enter a trance-like state for periods of time ranging from a few seconds to several minutes.

15. When T.R.'s dystonia began to increase, Ms. Rideau inquired with T.R.'s special education teacher and the teacher's aides as to whether they were aware of any reason T.R.

---

[2] Dystonia is a neurological movement disorder, in which sustained muscle contractions cause twisting and repetitive movements or abnormal postures. The disorder may be hereditary or caused by other factors such as birth-related or other physical trauma, infection, poisoning (e.g., lead poisoning) or reaction to pharmaceutical drugs, particularly neuroleptics. Source: Wikipedia, citing Dystonia fact sheet from National Institute of Neurological Disorders and Stroke.

would be experiencing increased distress or dystonia. Neither the teacher nor the aides provided Ms. Rideau with any information about why T.R. may have increased distress nor did they speculate as to the reasons his had increased. They certainly did not tell Ms. Rideau that T.R. was being abused or that his Individualized Education Program (IEP) was not being followed in any respect.

16.     In April 2008, unbeknownst to Mr. and Ms. Rideau at the time, another Keller ISD teacher reported Evans' physical and emotional abuse to Keller ISD officials, yet no action was taken by the District to protect T.R., who suffered even greater abuse and neglect in the subsequent school years, as detailed more fully below.

17.     In the absence of an explanation from KMS about why T.R.'s distress and dystonia increased, Ms. Rideau had T.R. evaluated in June 2009 at Medical City Hospital in Dallas, Texas and Texas Child Neurology in Plano, Texas. In addition, she made a request of Keller ISD that two people be present at all times when T.R. was changed. Accordingly, the requirement for "two adults [to be] present at changing times" for T.R. was incorporated into his IEP for the 2008/2009 school year.

18.     On or about May 26, 2009, T.R. returned home from school with a swollen left knee, for which he was treated at Cook's Children Hospital in Hurst, Texas and later at Baylor Medical Center in Grapevine, Texas. Keller ISD's staff and teachers were asked by and unable to explain to Ms. Rideau or T.R.'s other caregivers the source of T.R.'s injury.

19.     T.R.'s episodes of dystonia continued to increase into the 2009/2010 school year. Ms. Rideau again inquired with T.R.'s special education teacher and the teacher's aides (also referred to as "life skills paraprofessionals") as to whether they were aware of any reason T.R. would be experiencing increased distress and dystonia episodes. Neither the teacher nor the

aides could offer Ms. Rideau any explanation. On or about September 14, 2009, Ms. Rideau requested that Keller ISD teachers and staff keep a log documenting the date, time, duration, head or body parts affected, teacher or staff present, pre- and post-dystonia activity, etc. Ms. Rideau also made requests to Evans and Keller ISD administrators for cameras to be installed in the special education classroom to monitor the special education teacher and aides and ensure safety of students.

20. On October 6, 2009, T.R. returned home from school with a head injury. Keller ISD's teachers and staff reported to T.R.'s caregiver that the head injury resulted from an insect bite. Due to the size and nature of the contusion/knot on T.R.'s head, Ms. Rideau had him evaluated at Cook Children's Hospital in Hurst, Texas. The hospital physician was unable to conclusively establish the source of the head injury. Thus, Ms. Rideau had no information to contradict the report from Keller ISD personnel that the injury was caused by an insect bite. As described more fully below, Ms. Rideau did not learn of the probable source of T.R.'s head injury until May 13, 2010.

21. On December 14, 2009, T.R. returned home from school with a fractured thumb, for which he was treated at Cook Children's Hospital. For six weeks following the incident, T.R. had to wear a splint on his hand which limited his mobility and ability to assist in feeding himself. As described more fully below, Ms. Rideau did not learn of the probable source of T.R.'s fractured thumb until May 13, 2010.

22. On April 1, 2010, Ms. Rideau was called by the school nurse at Keller Middle School because T.R. was crying and appeared to be in severe pain. During the phone call, Ms. Rideau instructed the school nurse to remove T.R.'s clothes and check him thoroughly for injury. When Ms. Rideau arrived at Keller Middle School, the school nurse reported that T.R.

had no visible injuries to his body. The nurse then suggested that T.R. was likely suffering from constipation. An ambulance was called to the school and T.R. was taken to Baylor Medical Center in Grapevine, Texas, where he was treated for constipation symptoms and released. The very next day, T.R. refused to crawl as he usually did. When Ms. Rideau examined him to determine why he was unwilling to crawl, she discovered that his right knee was swollen. Subsequent x-rays at Cook Children's hospital on April 12, 2010 and May 8, 2010 indicated a probable knee injury. Because T.R.'s pain, swelling, and mobility limitations persisted, T.R. was forced to undergo the risks associated with sedation in order to have an MRI performed on May 19, 2010. The MRI confirmed that T.R.'s right knee was dislocated. As discussed more fully below, Ms. Rideau did not learn of the probable source of T.R.'s right knee injury until May 13, 2010.

23. On March 31, 2010, just one day prior to T.R. being rushed to the emergency room from school, Sandra Chapa, the principal of Keller Middle School, counseled Dan Evans regarding his professional ethical conduct, practices, and performance. Chapa then placed Evans on a professional growth plan that, among other things, required him to read a book titled, <u>The Common Sense Guide to Spcecial Education</u>. Chapa did not, however, remove Evans from the classroom. Consequently, Evans had access to T.R. and other students on April 1, 2010, the date T.R. likely sustained his right knee injury. Evans' personnel records further reveal that the District had knowledge of his acts and omissions as early as March 31, 2008, and yet it failed to take actions to protect T.R. and others from physical and emotional harm.

24. Due to the nature, frequency, and increasing severity of T.R.'s injuries, Ms. Rideau decided to request an investigation of T.R.'s special education teacher. On April 9, 2010, by and through the undersigned counsel, Ms. Rideau filed a complaint with Keller ISD

asking that it initiate an investigation of T.R.'s special education teacher to ascertain whether there were possible incidents of abuse or neglect taking place in the Life Skills classroom.

25. During the course of its investigation, Keller ISD self-reported to Child Protective Services because the witness interviews conducted by Sandra Chapa confirmed that T.R. was a victim of the school's improper practices and procedures which led to him being abused by Keller ISD personnel. The witness statements from Swiatocha, Lescovensky, and other Keller ISD employees reveal that the District was not following T.R.'s IEP, and that he was a victim of abuse, neglect, and endangerment as a direct result of Keller ISD's policies, customs, procedures and practices.

26. On May 13, 2010, the District presented Ms. Rideau with its investigation report, including the supporting witness statements. In August 2010, the District provided a copy of documents from Evans' personnel file to Plaintiffs' counsel, which revealed its knowledge of Evans' conduct over a period of several years. The production of the District's investigation report and Evans' personnel records allowed Ms. Rideau, for the first time, to have information that enabled her to see the nexus between T.R's injuries over the prior two school years and the acts or omissions of Keller ISD personnel. Prior to receiving these documents, no one at KMS reported to Ms. Rideau and she did not otherwise know that T.R.'s special education teacher and/or other staff: failed to follow his IEP; failed to use the District mandated two-person lift policy; regularly lost his balance when transferring T.R. to and from his wheelchair; frequently dropped T.R.; force bent T.R.'s body during episodes of dystonia; slammed T.R.'s head against a hard plastic swing as he was dropped to the floor; and forcefully kicked him onto a mat while yelling at him.

27. The investigation report provided to Ms. Rideau on May 13, 2010 details pervasive incidents of abuse and neglect to T.R. that, more likely than not, resulted in the emotional and physical injuries T.R. suffered from spring 2008 through the 2009/2010 school year. Specifically, the investigation report and personnel record detail the following abuse, neglect and endangerment by Evans and other Keller I.S.D. employees:  1) failure to follow T.R.'s IEP; 2) failure to use the District mandated two-person lift when transporting T.R.; 3) T.R. was frequently dropped or had his head hit on other objects; 4) his legs were forcefully bent by Evans during T.R.'s episodes of dystonia; 5) Evans forcefully kicked T.R. onto a mat from the floor while contemporaneously yelling or using a stern voice to speak to him; and 6) Evans deprived T.R. of meals and snacks throughout the school day because he often ate T.R.'s food, as well as other students'.

28. Additionally, the report and Evans' personnel record reveal that the foregoing acts of neglect/abuse were perpetrated with the actual and constructive knowledge of Keller ISD's personnel, including but not limited to the principals, special education teachers and life skills paraprofessionals at Keller Middle School and Bear Creek Elementary School, and the District's occupational and physical therapists, who were assigned to work with T.R. in his classroom settings.  Despite their knowledge, not a single administrator or employee did anything to stop the abuse, neglect and endangerment to T.R.

29. Senior level District employees who had knowledge of the abuse, neglect, and endangerment to T.R., failed to:  1) properly investigate concerns or complaints regarding the special education classroom instruction and care; 2) adequately staff, train, or supervise the special education teacher and paraprofessionals; 3) regularly monitor the special education classroom; 4) adhere to and enforce numerous District policies designed to promote the safety of

students; and 5) establish and promote communication between the staff and administration that included, among other things, mandatory procedures for reporting child abuse, neglect or endangerment.

30. The acts and omissions of KISD's employees proximately caused emotional trauma and physical abuse to T.R., including but not limited to: 1) increased episodes of dystonia throughout the 2008/2009 and 2009/2010 school years; 2) a left knee injury on or about May 26, 2009; 3) a head injury on or about October 6, 2009; 4) a fractured thumb on or about December 10, 2009; and 5) a dislocated right knee on or about April 1, 2010.  These injuries have caused T.R. emotional and physical pain and suffering; resulted in the loss of critical skills, i.e., crawling, bearing his weight, and pulling up, to name a few; and increased medical and therapy visits/expenses.

31. The District's acts and omissions as detailed above, including its failure to follow T.R.'s IEP, constitute a deprivation of his federal statutory and constitutional rights.

### VII.   CLAIMS FOR RELIEF PURSUANT TO THE REHABILITATION ACT OF 1973

32. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

33. Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 and its implementing regulations, require that each state that receives disbursements, including the state's political subdivisions such as local school districts, must ensure all students with disabilities are given appropriate and necessary accommodations, pursuant to federal law and rules. To the degree that a policy or practice hinders honest consideration of a disabled child's unique needs, and fails to accommodate that child's disability and keep the student safe, it violates Section 504.

34.     Plaintiffs assert that because Defendant Keller ISD failed to keep T.R. safe from harm, and failed to provide him an environment that was not hostile, such failures as noted above, have, together and separately, contributed to violating his rights under Section 504, as well as federal rules and regulations promulgated pursuant thereto.

35.     In addition or in the alternative, Keller ISDs failure to follow critical aspects of T.R.'s IEP that were targeted at improving his independence with respect to his mobility, bearing his own weight, transferring himself to and from his wheel chair, and feeding himself, among others, rises to the level of a gross mismanagement of his educational plan and is also a separate and distinct violation of Section 504 as well.

## VIII.   CLAIMS UNDER THE AMERICANS WITH DISABILITIES ACT

36.     Plaintiffs incorporate by reference all the above related paragraphs with the same force and effect as if herein set forth.

37.     The facts as previously described demonstrate violations of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.*

38.     Due to his status as a special education student, T.R. is a "qualified individual with a disability" as defined in 42 U.S.C. § 12131(2) with his disability affecting his major life activities; i.e., walking, communication, cognitive functioning, etc.

39.     The Keller ISD is deemed a "public entity" as defined in 42 U.S.C. § 12131(1), and receives federal financial assistance so as to be covered by the mandate of the ADA.

40.     The Keller ISD provides a facility whose operation constitutes a program and services for ADA purposes.

41.     Accordingly, no qualified individual with a disability shall be denied the benefits of the services, programs, or activities of a public entity.  42 U.S.C. § 12132.

42. As Keller ISD failed to correctly accommodate T.R.'s disability or make necessary modifications in his environment, commensurate with his unique and individualized needs, and was denied such benefits of non-disabled students, Keller ISD violated his rights pursuant to the ADA thereby.

## IX. STATE ACTION

43. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

44. Keller ISD was at all times and in all matters acting under color of state law when they permitted T.R. to be subjected to the wrongs and injuries set forth herein.

45. In addition, Keller ISD receives funds from the federal government, thus is required to follow the requisites of Section 504 of the Rehabilitation Act of 1973.

46. In addition, the Keller ISD is a policy-maker for itself. As such, it has acted under color of law for the purposes of formulating the policies, practices, procedures and customs for the school district during the events made the basis of this litigation.

## X. STATE-CREATED DANGERS AND DUTIES

47. Plaintiffs incorporate by reference all the above related paragraphs above with the same force and effect as if herein set forth.

48. T.R. is a person with severe disabilities and is totally dependent upon Keller ISD to meet his daily needs. As such, the school district developed for him an *Individualized Educational Plan* based upon his disability. This plan and duty created a "special relationship" between the Keller ISD and T.R. At all pertinent times, such acts and omissions of the Keller ISD increased the likelihood of danger and physical harm to T.R. and constituted a dangerous environment, and comprised a state-created danger in violation of the Fourteenth Amendment of

the Constitution of the United States, for which T.R. seeks recovery pursuant to 42 U.S.C. § 1983.

## XI. SPECIAL RELATIONSHIP

49.  Plaintiffs incorporate by reference all the above related paragraphs with the same force and effect as if herein set forth.

50.  A special custodial relationship existed at all pertinent times between the Defendants and T.R., a student with a disability. Accordingly, the Keller ISD School District Defendants had a corresponding duty to provide him a safe environment at the school.

## XII. CLAIMS PURSUANT TO 42 U.S.C. § 1983 AND THE 14TH AMENDMENT TO THE U.S. CONSTITUTION

51.  Plaintiffs incorporate by reference all the above related paragraphs with the same force and effect as if herein set forth.

52.  The School District Defendants, acting under color of law and acting pursuant to customs and policies of the district, deprived T.R. of rights and privileges secured to him by the Fourteenth Amendment to the United States Constitution and by other laws of the United States.

53.  The acts and omissions of the School District Defendants deprived T.R. of his rights to life, liberty, and bodily integrity guaranteed to him under the United States Constitution. Consequently, the School District Defendants are liable to T.R. pursuant to 42 U.S.C. § 1983 for compensatory monetary damages.

## XIII. UNCONSTITUTIONAL POLICIES, PROCEDURES, PRACTICES AND CUSTOMS

54.  Plaintiffs incorporate by reference all the above related paragraphs above with the same force and effect as if herein set forth.

55.  Plaintiffs contend that the School District Defendants had practices, procedures, and custom in place that: a) inadequately staffed the Life Skills classroom with teachers and

staff who could not perform the functions of the job; b) failed to require or enforce the reporting of abuse, neglect, or endangerment by District employees; c) failed to correctly train its personnel regarding T.R.'s disability and required accommodations; and d) failed to properly supervise and monitor the Life Skills classroom.

56. Plaintiffs contend that these failures of the School District Defendants, enumerated above, to have policies, procedures, practices and customs in place to protect T.R. from a known and inherent dangerous situation, violate the Fourteenth Amendment of the Constitution of the United States for which Plaintiffs seek recovery pursuant to 42 U.S.C. § 1983.

57. Based upon the operative facts, such acts and omissions rise to the level of deliberate indifference, constituting a violation of the Fourteenth Amendment of the Constitution of the United States, and for which T.R. seeks recovery pursuant to 42 U.S.C. § 1983.

### XIV.  COMMON LAW CLAIMS

58. Plaintiff incorporates by reference all allegations in paragraphs above with the same force and effect as if herein set forth.

59. Defendant Evans is liable to T.R. for negligence because he breached his duty of care and proximately caused T.R. to suffer emotional and physical injuries.

60. Defendant Evans is liable to T.R. for civil assault because he intentionally, knowingly, or recklessly made contact with his person, and caused T.R. bodily injury.

61. Defendant Evans is liable to T.R. for false imprisonment because, during the periods where he abused him, he willfully detained T.R. (who is wheelchair bound and immobile) without the consent of T.R. or his guardians, and without legal authority or justification.

62. In strict alternative to the other legal theories alleged above, Defendant Evans is also liable to Plaintiffs for intentional infliction of emotional distress because his acts and omissions, as detailed above, were intentional or reckless, extreme and outrageous, and proximately caused Plaintiffs to suffer severe emotional distress, which they in fact did suffer.

## XV.   RATIFICATION

63. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

64. The District ratified the acts, omissions and customs of Keller ISD employees who were otherwise responsible for the safety of T.R.; thus, the District is liable for such acts and omissions.

## XVI.   PROXIMATE CAUSE

65. Plaintiffs incorporate by reference all the above related paragraphs with the same force and effect as if herein set forth.

66. Each and every, all and singular of the foregoing acts and omissions, on the part of Defendants, taken separately and/or collectively, jointly and severally, constitute a direct and proximate cause of the injuries and damages set forth herein.

## XVII.   LIMITATIONS

67. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

68. Plaintiffs reasonably believe the Respondent school district may argue that all or part of T.R.'s claims are barred by the one year statue of limitations as set forth at 19 Tex. Admin. Code § 89.1151(c). However, Plaintiffs believe the one year statute of limitations is not applicable to all or part of this cause as T.R. may benefit from the tolling theories contemplated by Section 504 of the Rehabilitation Act of 1973, the ADA and Section 1983.

## XVIII. DAMAGES

69. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

70. As a direct and proximate result of the Defendants' conduct, T.R. has suffered injuries and damages, for which he is entitled to recover herein within the jurisdictional limits of this court, including but not limited to:

    a. Physical pain in the past;

    b. Medical expenses in the past;

    c. Mental anguish in the past;

    d. Mental anguish in the future;

    e. Mental health expenses in the past;

    f. Mental health expenses in the future;

    g. Physical impairment in the past, and

    h. Various out-of-pocket expenses incurred by the parents of T.R. due to the acts and omissions of the Defendants.

## XIX. PUNITIVE DAMAGES

71. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

72. The acts and omissions of the Defendant school district over the course of many years, and after receiving repeated notice of such acts and omissions not only shock the conscience, but satisfy criteria for punitive damages, as contemplated by Section 1983.

## XX. ATTORNEYS' FEES

73. Plaintiffs incorporate by reference all the above related paragraphs, as if fully set forth herein

74. It was necessary for Plaintiffs to retain the undersigned attorneys to file this lawsuit. Upon judgment, Plaintiffs are entitled to an award of attorney fees and costs pursuant to 42 U.S.C. § 1988(b), 42 U.S.C. § 794a, 42 U.S.C. § 12131, all pursuant to 42 U.S.C. § 2000et. seq.

### XXI.   DEMAND FOR JURY TRIAL

75. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial for all issues in this matter.

### PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray for judgment against each Defendant and request an order including but not limited to the following relief:

    a. A judgment in favor of Plaintiffs, as supported by a finding that the Defendant school district did not correctly accommodate T.R.'s disability, during the periods claimed, in total or in part;

    b. A judgment in favor of Plaintiffs, as supported by a finding that the Defendant school district violated Section 504 of the Rehabilitation Act of 1973 by failing to keep T.R. safe from harm, during the periods claimed, in total or in part;

    c. A judgment in favor of Plaintiffs, as supported by a finding that the Defendant school district violated Section 504 of the Rehabilitation Act of 1973 by grossly mismanaging T.R.'s educational plan, during the periods claimed, in total or in part;

    d. A judgment in favor of Plaintiffs, as supported by a finding that the Defendant school district violated the Americans With Disabilities Act, during the periods claimed, in total or in part;

e.  A judgment in favor of Plaintiffs, as supported by a finding that the Defendant school district violated T.R.'s rights pursuant to the Fourteenth Amendment to the United States Constitution, during the periods claimed, in total or in part;

f.  A judgment in favor of Plaintiffs, as supported by a finding that the Defendant Dan Evans was negligent as to T.R., during the periods claimed, in total or in part;

g.  A judgment in favor of Plaintiffs, in an amount sufficient to fully compensate them for the elements of damage enumerated above;

h.  An order directing the Defendant school district to pay punitive damages;

i.  An order directing the Defendant school district to take any and all other specific actions required by any and all the statutes noted above;

j.  An order declaring Plaintiffs as the prevailing party so that Defendants, jointly and severally, will be required to pay or reimburse Plaintiffs for all costs of preparation and trial of this cause of action, including, but not limited to, filing fees, costs of representation, advocate fees, attorneys' fees, and expert witness fees, incurred by them up to and through trial, and for its appeal if required, pursuant to Section 504 of the Rehabilitation Act of 1973; the ADA, Title IX, 42 U.S.C. § 1983 and § 1988; together with pre- and post-judgment interest, and court costs expended herein; and

k.  Such other relief as the Court may deem just and proper in law or in equity.

Respectfully submitted,

**GRUBER HURST JOHANSEN & HAIL, LLP**

/s/ Michael K. Hurst
Michael K. Hurst
State Bar No. 10316310
mhurst@ghjhlaw.com
Jaime K. Olin
State Bar No. 24070363
jolin@ghjhlaw.com
1445 Ross Avenue, Suite 2500
Dallas, Texas 75202
Telephone: 214-855-6800
Facsimile:  214-855-6808
**ATTORNEYS FOR PLAINTIFFS**


**CIRKIEL & ASSOCIATES, P.C.**

Martin J. Cirkiel, Esq.
State Bar No. 00783829
marty@cirkielaw.com

1901 E. Palm Valley Boulevard
Round Rock, Texas 78664
Telephone:  512-244-6658
Facsimile:  512-244-6014
**ATTORNEYS FOR PLAINTIFFS**